***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was self insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from September 19, 1947, to September 31, 1991.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for thirty (30) days within a seven-month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Defendant has stipulated that plaintiff does suffer from the occupational disease of asbestosis, which is causally related to asbestos exposure. Dr. Martha Carraway diagnosed him with asbestosis on October 29, 1997. Defendant further agrees that a Member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these and other diagnosing medical records were stipulated into evidence for consideration by the Commission. Further, plaintiff was diagnosed with colon cancer on July 3, 1991, by Dr. Victor Stelmack. Defendant neither agreed to stipulate that the colon cancer is causally related to plaintiff's asbestos exposure, nor stipulated to the admission of medical records related to plaintiff's colon cancer.
7. Plaintiff's income during the fifty-two (52) weeks prior to his retirement in 1991 was $54,916.00, which is sufficient to produce the maximum compensation rate for 1991, $406.00.
8. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
9. The parties agreed further that should plaintiff be awarded compensation, the Commission may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
10. The parties further agreed that should the Commission determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. On the issue of permanent impairment, plaintiff contends that he has been totally and permanently disabled by his colon cancer and asbestosis since the date of his last employment with Weyerhaeuser.
12 The parties agreed that the only contested issues for determination are:
 A. What benefits, monetary and/or medical, is Plaintiff entitled to receive, if any?
 B. Whether plaintiff's average weekly wage should be based on the maximum rate for the year of retirement or for the year of his diagnosis for asbestosis?
 C. Does N.C. Gen. Statute §§ 97-60 through 97-61.7
apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 D. Whether his colon cancer is a compensable occupational disease?
13. The parties submitted to the Commission the following medical records and reports by the following physicians confirming the diagnosis of asbestosis:
 A. An Advisory Medical Evaluation Report written by Dr. D. Allen Hayes, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on October 28, 1999. Dr. Hayes did a full physical examination, performed blood tests, chest x-rays, electrocardiogram, pulmonary function tests, and reviewed prior medical records including CT scan reports. It was the opinion of Dr. Hayes that plaintiff has pulmonary asbestosis with associated bilateral pleural plaques. He also reports that plaintiff has a Class 3 AMA impairment and estimates his impairment to be 20-40% of the whole person.
 B. Medical records from Dr. Sue Carraway of Duke University Medical Center dated October 1, 1997, through July 29, 1998. Dr. Carraway reported that plaintiff has episodic shortness of breath, PFT compatible with obstructive lung disease, and exam and chest x-ray compatible with restrictive lung disease. In light of significant asbestos exposure, Dr. Carraway ordered a CT scan to investigate for pleural calcifications and attempt to settle the issue of whether the patient does have asbestos-related lung disease. The CT scan performed on October 29, 1997, shows bilateral pleural plaques, bilateral basilar subpleural bands with a few lower lobe linear opacities consistent with fibrosis and asbestosis. A follow up CT scan performed on July 29, 1998, shows mild bibasilar fibrosis, slightly increased from prior, and small bilateral calcified pleural plaques, which are most consistent with asbestosis.
 C. A medical report from Dr. Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders saw plaintiff on August 31, 1999, for a complete evaluation including pulmonary functions tests. After a complete physical examination, Dr. Curseen reported that plaintiff had an extremely strong history for asbestos exposure and that the preponderance of medical evidence substantiates the diagnosis of asbestosis. His diffusion capacity was only 48% of predicted. Dr. Curseen classified plaintiff with a Class IV Level of AMA Respiratory Impairment based upon the pulmonary function tests.
 D. Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader, reviewed a chest x-ray dated July 23, 1999. He reports both pleural and parenchymal abnormalities consistent with pneumoconiosis, asbestosis.
 E. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the chest x-ray dated July 23, 1999. He reports irregular opacities present in the lower lung zones and circumscribed chest wall pleural thickening bilaterally. It was Dr. Rao's overall conclusion that in the presence of a significant exposure history to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis and asbestos-associated pleural fibrosis.
 F. Dr. Phillip H. Lucas, a radiologist and NIOSH B-reader, reviewed the chest x-ray dated July 23, 1999. He reported irregular interstitial opacities observed in both lower lung zones, the size and shape of which are classified as t/t and the profusion is 1/0. It is his overall opinion that there are bilateral fibrotic changes consistent with asbestosis in a patient who had an adequate exposure history and latency period.
 G. Dr. Paul C. Venizelos, a NIOSH B-reader, reviewed the chest x-ray dated July 23, 1999. He reported parenchymal and pleural abnormalities consistent with pneumoconiosis. The interstitial opacities are the size and shape of t/t in the lower and middle lung zones with a profusion of 1/1.
 H. Dr. Richard Bernstein, a NIOSH B-reader, reviewed the chest x-ray dated July 23, 1999. He reported pleural and parenchymal abnormalities consistent with pneumoconiosis. The interstitial opacities are the size and shape of s/t in the lower lung zones with a profusion of 1/1.
 I. Medical records and reports from defendant's asbestos medical surveillance program including records from Dr. Robert Shaw, Dr. Robert Venable, and other members of Weyerhaeuser's personnel.
14. Subsequent to the hearing, the transcripts from the depositions of the following medical experts were submitted to the Commission by counsel for the parties:
A. Dr. Martha Sue Carraway [July 20, 2000]
B. Dr. Albert Curseen [June 23, 2000]
C. Dr. Arthur Frank [June 23, 2000]
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from September 19, 1947, to September 31, 1991.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff worked for defendant as a helper in the turbine room where his duties included keeping track of oil pressure and cleaning the steam pipes and turbines. While he worked in the turbine room, workers would come once a year and tear off the asbestos insulation to get to the turbines. Plaintiff also worked side-by-side with the pipe fitters who would tear off asbestos insulation to work on the pipes. Defendant did not provide plaintiff with any respiratory protection to prevent asbestos exposure. Beginning in 1965, plaintiff worked in the instrument shop on steam valves that were covered with asbestos insulation and worked in extreme heat with asbestos gaskets. Plaintiff worked in the instrument shop until he retired.
4. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1947 to 1991.
5. Plaintiff began having shortness of breath problems around 1988 or 1989. Plaintiff complained to defendant's company doctor, Dr. Venable, about his shortness of breath, but he was never told why he had a breathing problem. Plaintiff also complained to his supervisor at work about his shortness of breath. He would often have problems at work carrying and lifting equipment. However, plaintiff's supervisor did nothing to decrease his exertion level at work and plaintiff continued to have to climb stairs and carry heavy equipment as part of his job duties. Moreover, the company disqualified him in 1989 from respirator use during heat and exertion because of his respiratory impairment. Thereafter and until his retirement, plaintiff was exposed to asbestos dust but could not wear a respirator because of his respiratory impairment.
6. Plaintiff consulted a cardiologist regarding his shortness of breath in 1991. However, after a quadruple bypass in September of 1991, his respiratory impairment persisted. Additionally, during a routine check up with Dr. Venable for his shortness of breath, plaintiff was diagnosed with colon cancer, which required surgery. Because of the severe progression of his shortness of breath, plaintiff returned to work for only one day after he recuperated from his colon cancer surgery. On September 31, 1991, plaintiff retired early because he could no longer perform his job duties with his respiratory impairment. He was subsequently diagnosed with asbestosis by Dr. Carraway of Duke University Medical Center, Dr. Curseen of Lake Norman Center for Breathing Disorders, and Dr. Hayes, the Advisory Panel Physician. Plaintiff continues to be monitored by Dr. Carraway for his asbestosis.
7. Plaintiff was diagnosed with colon cancer on July 2, 1991, by his family physician, Dr. Venable, who referred him to Dr. Stelmack. Dr. Stelmack surgically removed approximately 16 inches of Plaintiff's colon to combat the cancer. Plaintiff continues to be monitored by Dr. Stelmack for reoccurrence of colon cancer.
8. Plaintiff has only a formal education through the 12th grade. All of his subsequent training occurred while he was in the employ of defendant in their apprenticeship programs. He worked for defendant for forty-four years and was making approximately $55,000.00 per year when he retired. Plaintiff did not actively seek employment after he retired in 1991 because of his increasingly severe shortness of breath, his age, and the lack of comparable employment in the rural area in which he lives.
9. Plaintiff can no longer do chores around the house, engage in his former hobby of refinishing furniture, or actively play with his grandchildren. Plaintiff is only able to take short trips and his wife cannot leave him alone. He has not been able to mow his own lawn for 3 years and has had to pay others to take care of it.
10. Plaintiff stopped smoking in 1975, but did not have any shortness of breath or chest tightness until 1988 or 1989.
11. Based upon plaintiff's pulmonary symptoms back in 1989 and 1990, and the dusty environment that he was working in, plaintiff should have been required to wear a respirator. Since Plaintiff was restricted from respirator use because of strenuous exercise and heat on the job, he should have been removed from further dust and chemical exposure back in 1989.
12. Further, Dr. Curseen agreed with Dr. Carraway that based upon Plaintiff's pulmonary symptoms back in 1989 and 1990, his dusty work environment and his inability to wear a respirator, he should have been taken out of his job environment as early as 1989.
13. The opinions expressed by Dr. Frank in his deposition testimony were credible and valid. Plaintiff clearly could not work without a respirator under the circumstances, thus, it would have been reasonable to discontinue his work when he was restricted from respirator use in 1989. Further, Plaintiff's colon cancer was directly related to his occupational asbestos exposure based upon Dr. Frank's knowledge of the literature and his own studies. The studies of Drs. Selikoff and Frank found that the risk of colon cancer following occupational exposure to asbestos is about three times the risk of one not so exposed. This has also been concluded by official agencies including NIOSH, OSHA, and the National Cancer Institute. Additionally, once plaintiff was diagnosed with colon cancer, he should have avoided any employment that would have resulted in further asbestos dust exposure because of his significant increased risk of developing a second asbestos-related cancer.
14. Plaintiff does suffer from asbestosis, asbestos-related pleural disease and asbestos-related colon cancer as a result of his many years of asbestos exposure while employed by defendant. His employment with defendant placed him at an increased risk of developing these occupational diseases as compared to members of the general public.
15. His pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers, particularly a reoccurrence of colon cancer.
16. Plaintiff's colon cancer is a compensable occupational disease, which resulted in the loss of part of his colon. The colon cancer is casually related to his occupational exposure to asbestos, which put him at three times the risk of developing colon cancer compared to members of the general public.
17. The colon is an important organ and plaintiff has sustained injury to his colon as a consequence of his direct exposure to asbestos during his employment with defendant.
18. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. These procedures were in place during plaintiff's employment at the Plymouth facility. The Industrial Commission takes judicial notice of the facts so stipulated.
19. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
20. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which had been stipulated into evidence, included the facilities in North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
21. The Industrial Commission also takes judicial notice of the transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery in I.C. No. 000344.
22. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that all the procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility. The Industrial Commission takes judicial notice of the facts so stipulated.
23. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in North Carolina were the same. The Industrial Commission takes judicial notice of the facts so stipulated.
24. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript which has been stipulated into evidence included the facilities in North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
25. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by its own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. § 97-61.7.
26. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
27. Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
28. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
29. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation in the amount of $20,000.00 for the permanent injury of plaintiff's colon due to his occupational diseases of colon cancer. N.C. Gen. Stat. § 97-31(24).
2. Additionally, plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and97-62.
3. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
4. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
5. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
6. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
7. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis, asbestos related pleural disease, and his asbestos-related colon cancer for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
10. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff $20,000.00 for the permanent injury of plaintiff's colon, an important organ, due to asbestos-related colon cancer, subject to attorney's fees hereafter provided. Compensation due that has accrued shall be paid in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, March 22, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraph 1 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff and shall pay such amount directly to plaintiff's counsel.
4. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis, asbestos related pleural disease, and asbestos-related colon cancer for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
5. Plaintiff shall undergo additional examinations as provided by law.
6. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
7. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel are hereby held in abeyance pending the outcome of further hearings.
This 24th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ DIANNE C. SELLERS COMMISSIONER